TELECTRONICS, INC., Plaintiff,

v.

UNITED NATIONAL INSURANCE COMPANY, Defendant.

Civ. A. No. 91–A–2150.

United States District Court, D. Colorado.

June 15, 1992.

On Motion to Alter or Amend June 29, 1992.

Peter L. Edwards, Brian J. Spano, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for plaintiff.

Leslie Block Kaye, Dill, Dill & Carr, Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ARRAJ, District Judge.

This is a diversity action brought by Telectronics, Inc. ("Telectronics") against one of its insurers, United National Insurance Company ("United"), alleging breach of contract and bad faith breach of an insurance contract. The plaintiff has moved for summary judgment pursuant to Fed. R.Civ.P. 56. The defendant filed a cross motion for summary judgment and has moved for sanctions on the basis that the plaintiff's second claim for relief is groundless or without substantial justification. Jurisdiction is proper under 28 U.S.C. § 1332. I have reviewed the file and the briefs submitted in this matter and conclude that oral argument would not materially assist my decision. I therefore find and rule as follows.

## FACTUAL BACKGROUND

Telectronics is a New York Corporation with a principal place of business in Englewood, Colorado. It is engaged in the manufacture and sale of heart pacemakers and has brought this action against United, one of the insurance companies from which it purchased products liability insurance. United, a Pennsylvania Corporation, issued a General–Automobile Liability Policy, Policy No. GA 503520 ("Policy"), to Telectronics covering the period which ran from September 15, 1984 to September 15, 1985. On May 30, 1985, one of Telectronics' heart

pacemakers was implanted into Thelma L. Annis ("Annis"), a resident of Cape Girardeau, Missouri. Subsequently, Annis experienced some difficulties with the pacemaker, and on May 14, 1987, she had the device removed and replaced with a pacemaker manufactured by Medtronic, one of the plaintiff's competitors.

On August 25, 1987, an attorney representing Annis wrote to Telectronics alleging that the pacemaker had "malfunctioned by providing a stimulus to the heart when no stimulus was necessary and by virtue of leaking electric current into the chest wall due to a split in the insulation surrounding one of the conductors." He suggested a $500,000.00 settlement. This suggestion was not followed, a settlement was not reached, and on November 24, 1987, Annis filed suit against Telectronics in the United States District Court for the Eastern District of Missouri.

On December 11, 1987, Telectronics notified its insurance broker, Alexander & Alexander, that it had been served with a summons and complaint in the Annis suit. Alexander & Alexander then notified Adjusting Services Unlimited, Inc. ("ASU") on December 15, 1987.[1] Telectronics never provided United with direct notice of the Annis lawsuit.

On January 14, 1988, ASU wrote to an attorney with the firm of Armstrong, Teasdale, Schlafly & Davis (then known as Armstrong, Teasdale, Dramer & Vavohan) in St. Louis, Missouri ("Armstrong, Teasdale"). The letter stated that ASU was:

the claims administrator[ ] for the Illinois Insurance Exchange and their policy holders, Telectronics, Inc. Policy DOL 02181 was effective from 9/15/85 to 9/15/86 and policy DOL 07294 was effective from 9/15/86 to 9/15/87. Both of

these policies had combined single limits of $500,000 and the first policy had a self-insured retention of $25,000 while the second policy has a self-insured retention of $100,000. We believe that the coverage for this loss remains with the second policy.

Enclosed please find a Summons and Complaint and file material received from our insured's corporate attorney, Bill Nealon. We trust you will file an appearance and answer for Telectronics and protect their interests. . . .

The claimant began experiencing difficulties with the pacemaker on 7/25/86. She was admitted to the hospital in August 1986 and returned to the emergency room in January 1987. After a doctor's visit in March 1987 she entered the hospital on May 15, 1987 for a replacement.

Exhibit I at 4.[2]

Discovery continued in the Annis case. On November 2, 1990, ASU wrote to United informing it for the first time of the existence of the Annis lawsuit. The letter stated in part:

I am the claims administrator for Telectronics for occurrences between September 15, 1985 and September 15, 1987 where Transco Syndicate # 1, a member syndicate of the Illinois Insurance Exchange, provided overlying coverage. We are also your designated agent for claims reporting under your policy GA 503520.

We have recently received a pretrial statement from [Annis'] attorney that includes medical expenses from June through August 1985 and continuing to May 1987. From this we infer that claims for bodily injury during this time period exist. . . .

I have been asked on behalf of Telectronics as their claims administrator to place

---

1. ASU performs claims administration services and was the claims adjuster specifically referred to in the Policy. ASU was also retained by Telectronics to provide claims service on the liability insurance policies in effect after the Policy had terminated. Telectronics purchased a General–Automobile Liability Policy, Policy No. DOL–02181, from Transco Syndicate # 1, Ltd. ("Transco") that ran from September 15, 1985 to September 15, 1986. Transco also issued a Commercial General Liability Policy,

Policy No. DOL–07294, to Telectronics covering the September 15, 1986 to September 15, 1987 period. Both of these Transco policies, by endorsement, required Telectronics to retain ASU to handle the claims service on the policies.

2. Exhibits referred to by number indicate those filed in support of Telectronics' motion for summary judgment. Those exhibits referred to by letter were filed by United.

you on notice that bodily injuries are being claimed during your policy period and that Telectronics hereby seeks the protection of the policy referenced above issued by you.

Heretofore, plaintiff's complaints have focused on alleged injuries from July 1986 through May 1987.... Telectronics has incurred legal expenses in its defense of this case and seeks your participation in those expenses.

Exhibit 7. ASU informed United that trial in the Annis case was set for December 3, 1990.

United replied to ASU on November 29, 1990. It stated:

First we would point out that your notice to us of this lawsuit is hardly timely and that any participation in expense sharing would be limited to those expenses incurred from the date of receipt of your tender....

From the information supplied, it would appear that the potential period of injury ran from June 20, 1985 to May 15, 1987 or a period of 23 months. Our policy period covers 3 months, June 20, to September 15, 1985. Based upon the ratio of months our share would be 13% and we repeat that this offer is limited to the expenses incurred from the date of receipt of your tender, November 5, 1990.

Exhibit 8.

The Annis case was tried to a jury in December of 1990 resulting in a verdict and judgment in favor of Telectronics. No appeal has been taken. Telectronics now seeks to recover from United the expenses associated with defending the Annis suit including attorneys' fees, costs and expert witness fees in the amount of $156,805.90. Telectronics also seeks to recover the expenses associated with bringing the present action as well as exemplary damages due to United's alleged bad faith breach of the insurance contract.

## DISCUSSION

## I. COVERAGE UNDER THE POLICY

### A. Applicability of the Policy

■ Telectronics argues that the Annis lawsuit fell within the terms of the Policy,

that United had a duty to provide it with a defense and that by refusing to do so fully, United breached the terms of the Policy and acted in bad faith. Telectronics therefore requests that I award it $156,805.90 in expenses incurred defending the Annis suit (minus a deductible), that I award it costs and expenses associated with bringing this lawsuit and that I award it punitive damages and pre-judgment interest. United contends that Telectronics breached a condition of the Policy by failing to give it notice of the Annis suit for approximately three years and thus is not entitled to any contribution or payment. Both parties seek summary judgment on this issue.

The Policy provided liability coverage for bodily injury and property damage with a $1,000,000.00 limit, both in the aggregate and per occurrence. United agreed to pay

on behalf of [Telectronics] all sums which [Telectronics] shall become legally obligated to pay as damages because of ... **bodily injury** ... to which this insurance applies, caused by an **occurrence**, if the **bodily injury** ... is included within ... the **products hazard**, and [United] shall have the right and duty to defend any suit against [Telectronics] seeking damages on account of such **bodily injury** ... even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

Exhibit 3 at 7. Additionally, the Policy included a $10,000.00 deductible which applied to both bodily injury liability and to "investigation, adjustment, and legal expenses incurred in the handling and investigation of each claim."

Bodily injury is defined in the Policy to include "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* at 2. Products hazard "includes **bodily injury** ... arising out of the **named insured's products.**" *Id.* at 3. An occurrence "means an accident, including continuous

or repeated exposure to conditions, which results in **bodily injury** ... neither expected nor intended from the standpoint of the **insured**." *Id.*

The complaint filed in the Annis lawsuit alleges that the pacemaker manufactured by Telectronics was:

in a defective condition and was unreasonably dangerous when put to a reasonably anticipated use in that, due to a defect in the silastic covering of the electrode of said pacemaker, said pacemaker was not adequately insulated and leaked electricity into Plaintiff's chest wall and upper body and further caused a sensing malfunction resulting in said pacemaker providing electric stimulus to the heart muscle of Plaintiff when no such stimulus was needed and failing to provide a stimulus to the heart muscle when needed.

Exhibit 5 at 2. The complaint alleged that Annis suffered "periods of electrical shocking, weakness, sleeplessness, heart palpitations and skipping, anxiety and syncope." *Id.* Annis began experiencing difficulties and claimed damages for the period beginning approximately June 20, 1985 through the time the pacemaker was removed on May 14, 1987.

Clearly Annis alleged a "bodily injury" within the "product hazard" caused by an "occurrence" during the Policy period as those terms are defined in the Policy. I therefore rule as a matter of law that Telectronics was entitled to a defense in the Annis suit if it complied with the terms of the Policy. It is this latter issue that the parties have primarily addressed.

### B. Proper Notice to United

The Policy sets out Telectronics' duties in the event of an occurrence, claim or suit:

(a) In the event of an **occurrence**, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to [United] or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to [United] every demand, notice, summons or other process received by him or his representative.

(c) ... The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

Exhibit 3 at 3. The Policy then provides that "[n]o action shall lie against [United] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy." *Id.* In addition to the standard, printed clauses in the Policy concerning notice, endorsement no. 5 to the Policy states in its entirety:

### CLAIMS REPORTING

IN THE EVENT OF ANY OCCURRENCE THAT MAY RESULT IN A CLAIM AGAINST THIS POLICY, THE INSURED SHOULD IMMEDIATELY REPORT SUCH OCCURRENCE TO:

ADJUSTING SERVICES UNLIMITED, INC.
P.O. BOX 19069
LANSING, MICHIGAN 48901
TELEPHONE NUMBER—(517) 321-5565

Exhibit 3 at 14.

United argues that Telectronics' failure to give it direct notice of the Annis claim and suit for approximately three years[3] was a breach of a condition precedent which voided coverage and relieved United of its duty to defend Telectronics or share in the defense costs. It argues that notice to ASU was not effective notice to United, and that the three year time lapse was neither "as soon as practicable" nor "imme-

---

**3.** Telectronics received a letter from Annis' attorney dated August 25, 1987 indicating the likelihood of an "occurrence." Suit was filed on November 24, 1987. United claims that the first notice it received was the November 2, 1990 letter from ASU.

diate" as required by the terms of the Policy. United concludes by arguing that this unreasonable delay was prejudicial to its interests and moves for summary judgment on this issue.

Telectronics argues that its notice to ASU via Alexander & Alexander, its insurance broker, was effective under endorsement no. 5 to the Policy. It also argues that ASU was United's agent, and thus notice to ASU was timely notice to United. Telectronics argues in the alternative that if effective notice was not received by United until November of 1990, United is still liable under the Policy absent a showing of prejudice to its interests.

█ Endorsement no. 5 clearly required Telectronics to provide notice to ASU in the event of an "occurrence." Telectronics argues that this typewritten portion of the Policy takes precedence over the other pre-printed notice requirements. As a matter of general contract law, if the "written and printed clauses of an instrument are repugnant to each other the printed form must yield to the written clauses, as the latter are presumed to be the deliberate expression of the real intent of the parties." *Onofrey v. Wolliver*, 351 Pa. 18, 21, 40 A.2d 35, 38 (1944); *see also Nicklis v. Nakano*, 118 Colo. 317, 321, 195 P.2d 723, 724–725 (1948) ("When written and printed provisions in a contract cannot be reconciled, the written provisions prevail"). However, for this doctrine to be brought into play, there must be some repugnancy or conflict requiring a reconciliation. Endorsement no. 5 does not create such an inconsistency. It merely requires Telectronics to give additional notice to the entity providing insurance adjusting services under the Policy. Therefore Telectronics still had to satisfy the notice provisions of the Policy in order for United to bear any liability. Only if ASU was an agent of United's, would notice to ASU satisfy the conditions of the Policy. This, however, is not an issue that the parties have rendered capable of resolution.

ASU's status in this triangular relationship is a curious one. Despite suggestions in my previous order in this case dated March 23, 1992, nothing has been submitted by the parties conclusively establishing the exact relationship between the three entities. Telectronics' general counsel, William Nealon, was of the opinion that "ASU was acting primarily for and on behalf of Telectronics' product liability insurers, rather than Telectronics." He had "no doubt in [his] mind that ASU was the agent for [United] for purposes of receiving claims made under the Policy." Affidavit of William C. Nealon, Exhibit 1 at 4. Larry Mims, a casualty supervisor for ASU, opined that "[b]y virtue of Endorsement 5, ASU was [United's] authorized agent for the purpose of receiving, on behalf of [United], any notices pertaining to claims being made under the Policy." Affidavit of Larry S. Mims, Exhibit 2 at 2. On the other hand, Richard March, vice president of United, stated that "A.S.U. was not an agent of United, nor did A.S.U. at any time serve as United's agent with respect to *Annis*." Affidavit of Richard S. March, Exhibit C at 9.

I conclude that a question of fact remains precluding a ruling on the sufficiency of Telectronics' notice to ASU. The parties, for one reason or another, have not supplied the Court with sufficient information to determine the agent/principal relationships among the three entities concerned. In light of my rulings below, however, I find that this remaining question is not material to the ultimate resolution of the matter before me.

Telectronics' alternative argument asserts that even if notice was not given to United until November of 1990, United suffered no prejudice because the jury returned a verdict in favor of Telectronics and the defense attorneys for Telectronics, Armstrong, Teasdale, were on United's list of approved counsel. The persuasiveness of this argument depends upon which state's law applies to the analysis.

█ In Colorado, the law is well settled "based on traditional principles of contract law, that an unexcused delay in giving notice or forwarding suit papers relieves the insurer of its obligations under the policy." *Marez v. Dairyland Insur-*

*ance Co.,* 638 P.2d 286, 290 (Colo.1981). A failure to enforce notice provisions, such as the ones at issue in this case, "would negate the purpose of the contract conditions and render them meaningless and would in effect rewrite the insurance policy contrary to the intent of the parties as expressed by the clear, unambiguous language of the contract." *Id.* at 291. "[E]xpress provisions in a policy requiring that the insured give notice of the accident and forward suit papers to the insurer as a condition precedent to coverage· are enforceable." *Hansen v. Barmore,* 779 P.2d 1360, 1362 (Colo. App.1989). Such provisions may only be set aside based upon substantial justification, such as an adequate excuse for noncompliance or actual notice to the insurer by a third party. Neither one of these exceptions is alleged or applicable here.[4] Thus, under Colorado law, Telectronics breached a condition of the Policy by not providing notice within a reasonable time, and United would not be liable to provide it with a defense or share in the defense costs. Prejudice, if any, to United would not be relevant. *See Marez,* 638 P.2d at 289–291.

In Pennsylvania, however, the caselaw has developed in a different direction. In that jurisdiction the Supreme Court of Pennsylvania recognized:

a trend of late in several jurisdictions away from the classic contractual approach towards a view that considers prejudice to the insurance company as a material factor in determining whether to relieve the insurance company of its coverage obligations by virtue of late notification.

*Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 71, 371 A.2d 193, 195 (1977). The Court concluded that "the preferable rule is that which requires the insurance company to prove not only that the notice provision was breached, but also that it suffered prejudice as a consequence." *Id.* 371 A.2d at 196; *see also Metal Bank of America, Inc. v. Insurance Company of North America,* 360 Pa.Super. 350, 520 A.2d 493, 498 (1987); *Clark v. State Farm Automobile Insurance Co.,* 410 Pa.Super. 300, 599 A.2d 1001, 1006 (1991).

In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.

*Brakeman,* 371 A.2d at 197. The burden of showing prejudice is placed on the insurance company. *Id.* at 198.

■ Thus, Pennsylvania law requires that United prove by a preponderance of the evidence not only that the notice provision was breached, but also that this breach prejudiced its interests in some way. United argues that it did indeed suffer prejudice because it "was stripped of its right to bring an action for declaratory judgment at the time *Annis* was instituted." It also argues that it lacked any control over the Annis defense or over the expenses incurred and now has no reliable method to evaluate the reasonableness of Telectronics' claimed expenses.

■ I do not find that these allegations of prejudice suffice to meet United's burden of proof in this case. There is nothing in the record to indicate any direct prejudice on United's part. United received direct notice of the Annis suit just prior to the actual trial in this case. If a verdict had been entered against Telectronics, I might be more receptive to their argument, but in this case, I find nothing to support such a conclusion.

Therefore, under Pennsylvania law, United was not relieved of its duty under the Policy to provide Telectronics with a de-

**4.** It is possible that Telectronics and ASU did not learn that Annis' claim for damages encompassed June through September of 1985 until the Fall of 1990; but nothing has been provided to support such a notion. If this were the case, it might rise to the level of "substantial justification;" however, I need not reach that issue.

fense in the Annis suit or share in those defense costs regardless whether Telectronics' notice to ASU was effective notice to United. In light of the conflict between the jurisdictions of Colorado and Pennsylvania regarding the effect of improper or untimely notice to an insurer, I must determine which state's law should apply to the facts of this case.

### C. Choice of Law

■ The Policy does not indicate which state's law should govern disputes arising under its terms. Telectronics, a New York Corporation with a principal place of business in Colorado, argues that Pennsylvania law should apply because United is located in Philadelphia and the Policy was issued in Pennsylvania. United, a Pennsylvania Corporation, argues that the substantive law of the state where the suit was brought should govern. It argues that Colorado law should apply since it is the state with the most significant relationship to the insurance contract.

In a diversity action such as this, federal courts must apply the choice-of-law rules of the state in which the suit was brought. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Johnson v. Continental Airlines Corporation*, 964 F.2d 1059, 1063 n. 5 (10th Cir.1992). Colorado has adopted the *Restatement (Second) of Conflict of Laws* (1971) (*Restatement*) approach for resolving choice of law issues arising in contract actions. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 447, 601 P.2d 1369, 1372 (1979).

Where a conflict of laws question is raised, the objective of the *Restatement (Second)* is to locate the state having the "most significant relationship" to the particular issue. In analyzing which state has the most significant relationship, the principles set forth in *Restatement (Second)* section 6 and 188 are to

be taken into account. Once the state having the most significant relationship is identified, the law of that state is then applied to resolve the particular issue. *Id.* (footnotes omitted).

Section 188(1) of the *Restatement* states that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Section 188(2) sets out the following contacts to be taken into account when determining which state has the most significant relationship to a contract:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

The Tenth Circuit, interpreting Colorado law, has stated that "[i]nsurance policies generally are interpreted under the law of the state where the policy was issued." *Budd v. American Excess Insurance Co.*, 928 F.2d 344, 347 (10th Cir.1991) (citing *Blue Cross of Western New York v. Bukulmez*, 736 P.2d 834, 841 (Colo.1987)). I find the Tenth Circuit's reading of *Bukulmez* to be a bit restrictive. In that case, the Colorado Supreme Court examined the public policies underlying the no-fault insurance laws of both Colorado and New York and found them to be in accord. Although the Court considered the public policy of New York since the contract at issue had been entered into in that state, it did not rule that the state of issuance was to be the *sole* determinative factor in choosing the applicable state law.

I have considered all of the factors set forth in both section 188 and section 6[5] of

**5.** Section 6(2) of the Restatement sets out the following factors relevant to choosing the applicable state law:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,

the *Restatement* and conclude that Pennsylvania law should apply to the interpretation of the Policy. It seems clear to me that Pennsylvania has the most significant relationship to the contract and the greatest interest in seeing that its laws apply when interpreting the notice provisions of insurance contracts written and issued by Pennsylvania insurers. It simply would not make sense to have United's insurance contract notice provisions interpreted in fifty different ways every time a dispute arose between United and one of its insureds. Since the subject matter of the Policy (the heart pacemakers) has no particular locus, there is no compelling reason to apply the law of the state in which the insured has its principal place of business. The worthy goals stated in *Restatement* § 6 of uniformity, predictability and ease of applicability are best served by applying Pennsylvania law to this dispute.

I conclude that the issues involved in the breach of contract claim in this case will be resolved under Pennsylvania law. I therefore rule that Pennsylvania law applies to the interpretation of the notice provisions, and that as a matter of law, United had a duty under the Policy to provide Telectronics with a defense in the Annis case and share in the defense costs.

## II. REIMBURSEMENT OF DEFENSE COSTS UNDER THE POLICY

■ Having determined that United had a duty to provide Telectronics with a defense, I must now determine the extent of that liability. Telectronics argues that United must reimburse it for the entire amount of its defense costs and expenses. It premises this argument apparently of the theory that the "occurrence" covered by the Policy was the implantation of the heart pacemaker, and even though Annis alleged that she suffered injuries subsequent to the Policy's period, Telectronics

argues that United is solely responsible for providing it with a defense.

United disagrees with this analysis and argues instead that if liability exists, United is only responsible for thirteen percent of the defense costs. It bases this percentage on the relative period of time its Policy was in effect in relation to the total period of time covered by Annis' allegations of bodily injury. Annis alleged that the heart pacemaker began malfunctioning on approximately June 20, 1985 and continued to cause her injuries until its explantation on May 14, 1987. United thus argues that its period of coverage comprised only thirteen percent of the total exposure period, and that the subsequent two insurance policies issued by Transco were in effect for the remaining eighty seven percent.[6]

Clearly, as I have previously stated, there was an occurrence during the Policy period. As set out above, the Policy defined occurrence to include "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury**." Exhibit 3 at 3 (underline added). However, this does not mean that United is solely responsible for providing Telectronics with a defense.

Telectronics argues that the Policy contains a provision which indicates that United is entirely responsible for reimbursing its defense costs.

For the purpose of determining the limit of [United's] liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**.

Exhibit 3 at 7. But this section, contained in that part of the Policy describing the limits of liability, only indicates that bodily injury or property damage caused by "con-

---

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

**6.** Of the twenty three total months comprising Annis' alleged injuries, United provided coverage for three months. This three months equates to the asserted thirteen percent.

tinuous or repeated exposure to substantially the same general conditions" does not subject United to liability for *multiple* occurrences. This type of injury is to be considered one occurrence for purposes of the Policy's limits, but that section of the Policy is not relevant to the issues before me.

I am again guided by Pennsylvania law in my interpretation of the Policy. The Pennsylvania courts have addressed the issue of continuous occurrences over multiple insurance policies in the context of asbestos litigation. In *J.H. France Refractories Co. v. Allstate Insurance Co*, 396 Pa.Super. 185, 203, 578 A.2d 468, 477 (1990), *app. granted,* 527 Pa. 634, 592 A.2d 1302 (1991), the Superior Court of Pennsylvania determined that *all* insurers whose policies were in effect during both the exposure and manifestation periods of asbestos related diseases were responsible to the manufacturer for providing it with a defense. In a case involving exposure to diethylstilbestrol (DES), the same Court held "that the language 'bodily injury,' 'sickness' or 'disease' includes coverage from time of exposure to time of manifestation." *Vale Chemical Co. v. Hartford Accident and Indemnity Co.,* 340 Pa.Super. 510, 522, 490 A.2d 896, 902 (1985), *rev'd and vacated on other grounds,* 512 Pa. 290, 516 A.2d 684 (1986); *see also AC and S, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968, 972 (3rd Cir.1985) (following the analysis of *Vale Chemical* and holding that bodily injury means "any part of the single injurious process"); *Forum Insurance Co. v. Allied Security, Inc.,* 866 F.2d 80, 85 (3rd Cir.1989) (under Pennsylvania law, the costs of defense should be apportioned between multiple insurers).

■ Pennsylvania precedent simply does not support the type of liability envisioned by Telectronics. Instead, the Pennsylvania courts have shared the defense responsibility among all insurers having policies in effect during either the exposure or manifestation of diseases. I find this result to be equitable and logical. In the context of an alleged continuing injury of the type at issue here, I conclude that all policies in

effect throughout the course of the alleged injury period are required to share in the defense cost. This conclusion requires that I determine an appropriate method for apportioning the defense costs among the various insurers involved.

The leading case in Pennsylvania involving the apportionment or proration of insurance defense costs in cases of continuing injury, although not cited by either party, is *J.H. France Refractories Co. v. Allstate Insurance Co,* 396 Pa.Super. 185, 578 A.2d 468 (1990), *app. granted,* 527 Pa. 634, 592 A.2d 1302 (1991). In that case, the Superior Court of Pennsylvania concluded:

> that each insurer shall be obligated to pay a portion of the indemnification and liability costs consistent with the proportionate share of time its policy was in effect during the claimant's period of exposure.... Logic further dictates that any deductible and/or occurrence limits be reduced by the same proportion.... [F]or any periods of time in which [the insured] operated without products liability coverage it must be considered uninsured and thus, liability imposed for that portion of the injury sustained during the uninsured period will not be indemnified.

*Id.* 578 A.2d at 480 (footnote omitted); The Court cited *Insurance Co. of North America v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir.1980), *reh'g granted, clarified,* 657 F.2d 814 (6th Cir.1981), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) which stated:

> An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period. Where the distinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk.

*Forty–Eight Insulations,* 633 F.2d at 1224–25. Pennsylvania has thus adopted the apportionment theory advanced in this case by United.

Telectronics alleges that it expended $156,805.90 in attorneys fees and related

**1392**

expenses associated with defending the Annis case. This amount is supported by the affidavit of William Nealon, Exhibit 1 at 5, and by a fairly indecipherable collection of invoices. Exhibit 9. United has presented nothing in its pleadings or exhibits challenging the reasonableness of these expenses other than to argue in its brief that it has no reliable method to evaluate their reasonableness. By failing to adequately challenge the expenses asserted by Telectronics, United has not created a question of material fact, and the $156,805.90 will be accepted by this court. Thirteen percent of Telectronics expenses equates to $20,384.77 minus thirteen percent of the Policy's $10,-000.00 deductible ($1,300.00), as set out by the court in *J.H. France Refractories*, equals a total of $19,084.77 in defense costs owed to Telectronics by United.[7] The remaining 87% of the defense costs must be borne by Telectronics.[8]

I therefore determine that United must reimburse Telectronics for thirteen percent of its defense costs and expenses in the Annis lawsuit in the amount of $19,084.77. Telectronics shall bear the remaining expenses.

## III. BAD FAITH BREACH OF AN INSURANCE CONTRACT

■■■ Telectronics' second claim for relief alleges bad faith breach of an insurance contract on the part of United. Both parties argue in their briefs that Colorado law should apply. In light of this harmony and the lack of any apparent conflict with section 145 of the *Restatement (Second) of Conflict of Laws* (1971), as adopted by the Colorado Supreme Court in *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 448, 514 P.2d 314, 320 (1973), I will apply Colorado law to the resolution of this claim.

The tort of bad faith breach of insurance contract was first recognized by the Colorado Supreme Court in *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984).

In the context of insurance contracts, courts have established two standards of conduct by the insurer, depending on the type of benefit the insured is seeking to enforce. When the benefit derives from the insurer's duty to defend the insured against third-party actions, that relationship is characterized as a "third-party claim." A "first-party claim," on the other hand, results when the insured makes a claim against his insurer for benefits accruing directly from the insurance contract.

*Farmers Group, Inc. v. Williams*, 805 P.2d 419, 421 (Colo.1991). Third party claims are governed by a reasonableness standard, "i.e. would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Trimble*, 691

---

**7.** I find United's contention that it is liable only for defense costs incurred from the date it received direct notice of the Annis claim from ASU to be inconsistent with the reasoning of *Brakeman, supra.*

**8.** Each of the subsequent Transco policies, Policy Nos. DOL–02181, Exhibit E, and DOL–07294, Exhibit F, provided by endorsement that Telectronics had a self-insured retention limit. The initial policy had a retained limit of $25,000.00 and the second policy had a retained limit of $100,000.00. Both policies had a $500,000.00 total liability limit. Transco could not be liable under either of the policies unless these retention levels were exceeded by judgment or settlement. If the retained limits were exceeded, then Transco was obligated to pay "IT'S [sic] PROPORTION OF LOSS EXPENSES (EXCLUDING SALARIES OF EMPLOYEES AND OFFICE EXPENSES OF THE NAMED INSURED) IN THE RATIO WHICH IT'S [sic] PROPORTION

OF THE LIABILITY FOR THE JUDGEMENT RENDERED, OR SETTLEMENT MADE, BEARS TO THE WHOLE AMOUNT OF SAID JUDGEMENT OR SETTLEMENT." *See* Endorsement 1 to Exhibit E at 21 and Endorsement 4 to Exhibit F at 27 (substantially identical language). In a case such as this one, involving a jury verdict and judgment in Telectronics' favor, the retained limits were not exceeded, and Transco had no liability under its policies.

The retained limits had the effect of lowering Telectronics' insurance premiums and giving it greater control over the defense of lawsuits. This type of policy provision also had the effect of basically making Telectronics a self insured corporation to the extent the retained limits were not exceeded by judgment or settlement. Thus, under *J.H. France Refractories* and *Forty-Eight Insulations*, Telectronics was either uninsured or self-insured and responsible for the remaining 20 months or 87% of alleged injurious period involved in the Annis lawsuit.

P.2d at 1142 (quoting *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 692, 271 N.W.2d 368, 377 (1978)). First party claims, however, require a claimant to "establish that the insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1274 (Colo.1985).

Telectronics argues that this is a third-party claim while United contends that this is a first-party claim. I find that under either standard, United is entitled to summary judgment on the plaintiff's second claim for relief. Nothing has been presented to this court suggesting that United acted in bad faith in its dealings with Telectronics. As I have indicated in my rulings above, United's position with respect to the Annis lawsuit was reasonable and supported. When United received its initial direct notice of the occurrence in November of 1990, it offered to pay thirteen percent of all expenses incurred subsequent to that date. United's refusal to pay costs prior to that time was based on the belief that it had not received timely notice under the Policy. Though I have not ruled on the effectiveness of the notice to ASU, clearly it is a position upon which reasonable minds could differ.

I therefore rule that United's motion for summary judgment on Telectronics' second claim for relief will be GRANTED. Consequently I will DENY Telectronics' request for attorneys' fees and costs in the prosecution of the present action as well as its request for punitive damages.

Telectronics has also requested an award of prejudgment interest. Prejudgment interest is an integral element of compensatory damages and not subject to an independent choice of law analysis. *Johnson v. Continental Airlines Corporation*, 964 F.2d 1059, 1064 (10th Cir.1992). Therefore Pennsylvania law still applies. "In a contract action the award of such interest does not depend upon discretion but is a legal right. It must be awarded despite the good faith of the party contesting the claim. *Gold & Co. v. Northeast*

*Theater Corp.*, 281 Pa.Super. 69, 75, 421 A.2d 1151, 1154 (1980) (citations omitted). "Interest should be paid from the time when there should have been an accounting and payment." *Id.* 421 A.2d at 1154–55 (quoting *McCornack v. Sharples*, 254 Pa. 541, 543, 99 A. 155, 156 (1916). Here, there is no specific allegation on the part of Telectronics regarding the time an accounting and payment should have been made. I will therefore award prejudgment interest from the date the lawsuit was filed, November 21, 1991, to the date of this judgment. Pennsylvania law provides "for prejudgment interest in breach of contract cases at the statutory rate of six percent per annum." *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58, 69 (1989); *see also Gurenlian v. Gurenlian*, 407 Pa.Super. 102, 595 A.2d 145, 148 (1991) (court has discretion to award market rate or statutory rate for prejudgment interest); 41 Pa.Cons.Stat. Ann § 202 (1991). I therefore will award Telectronics the statutory interest rate in accordance with Pennsylvania law.

## IV. UNITED'S MOTION FOR SANCTIONS

United argues that Telectronics second claim for relief alleging bad faith breach of an insurance contract was "wild overreaching, unsupported by any evidence whatsoever and must be concluded to be intended to strike fear." It therefore moves for sanctions pursuant to Fed. R.Civ.P. 11.

The Tenth Circuit Court of Appeals has declared that district courts are to apply an objective standard when determining whether to impose Rule 11 sanctions. I must therefore "determine whether a reasonable and competent attorney would believe in the merit of an argument." *Dodd Insurance Services, Inc. v. Royal Insurance Company of America*, 935 F.2d 1152, 1155 (10th Cir.1991). Under the facts as presented in this case, I do not believe that sanctions pursuant to Rule 11 are appropriate. Though I find the plaintiff to be incorrect as a matter of law as to its second claim for relief, I cannot say that no reasonable and competent attorney could con-

clude otherwise. In any event, I decline to award Rule 11 sanctions and DENY United's motion on this ground.

IT IS THEREFORE ORDERED THAT:

1) Telectronics Inc.'s motion for summary judgment against the defendant, United National Insurance Company, is GRANTED as to the defendant's duty to share in the plaintiff's defense costs.

2) United's motion for summary judgment based on Telectronics alleged failure to comply with the notice provisions of the Policy is DENIED.

3) United pay to Telectronics $19,084.77 as reimbursement for 13% of Telectronics' expenses and costs associated with defending the Annis lawsuit.

4) United's motion for summary judgment on Telectronics' second claim for relief is GRANTED.

5) Telectronics' request for attorneys' fees in the present action and for punitive damages is DENIED.

6) Telectronics' request for prejudgment interest is granted at the rate of 6% per annum from November 21, 1991 to the date of this judgment.

7) United's motion for sanctions pursuant to Fed.R.Civ.P. 11 is DENIED.

The clerk shall enter judgment in accordance with this opinion. Each party shall bear its own costs and attorneys' fees.

## ON MOTION TO ALTER OR AMEND

ARRAJ, District Judge.

I issued a Memorandum Opinion and Order in this diversity action on June 15, 1992. On June 25, 1992, Telectronics, Inc. ("Telectronics") moved to alter or amend that judgment pursuant to Fed.R.Civ.P. 59(e). Alternatively Telectronics has moved to vacate the June 15, 1992 Order and Judgment and hold their entry in abeyance until the Pennsylvania Supreme Court has ruled on the pending appeal in *J.H. France Refractories Co. v. Allstate Insurance Co*, 396 Pa.Super. 185, 578 A.2d 468 (1990), *app. granted,* 527 Pa. 634, 592 A.2d 1302 (1991). Having reviewed Telectronics'

motion, memorandum and four attached exhibits, I now DENY its request.

The basis of Telectronics' motion to alter or amend the previous judgment seems to be that *France* dealt only with the proration of indemnification and liability costs rather than with the proration of defense costs. Hence Telectronics argues that my previous reliance on that case was misplaced. However, that is clearly an issue that I considered and resolved in the June 15, 1992 Opinion and Order. Although the duty to defend is indeed broader than the duty to indemnify, I concluded that under Pennsylvania law, proration of the defense costs in the underlying Annis lawsuit was appropriate. If Telectronics, the party arguing for the application of Pennsylvania law in the first place, had elected to discuss *France* in its original motion for summary judgment, this Rule 59(e) motion would not be before me now.

I find that Telectronics has submitted nothing that the Court has not previously considered and therefore DENY its motion to alter or amend the June 15, 1992 Memorandum Opinion and Order.

I also deny Telectronics' motion to stay the entry of Judgment. Although the Third Circuit Court of Appeals and the United States District Court for the Eastern District of Pennsylvania may be interested in patiently waiting to see how Pennsylvania's high court will rule in the *France* case, I am not. If this was a case pending in the Tenth Circuit or perhaps the Colorado Supreme Court, I might be inclined to wait if the matter had been brought to my attention during the original briefing of the motion for summary judgment. However, now that Judgment has been entered, I will not allow this case to sit idly by while an appeal in a foreign jurisdiction winds its way through the appellate process. If *France* is reversed, the Tenth Circuit is quite capable of interpreting its effect on any appeal of this case without my assistance. Telectronics' motion to stay is therefore DENIED.