Nicholas A. CLEMENTE, Esq.,
and Nicholas A. Clemente,
P.C., Plaintiff,

v.

The HOME INSURANCE COMPANY,
Defendant.

Civ. A. No. 91–5103.

United States District Court,
E.D. Pennsylvania.

May 5, 1992.

Thomas More Marrone, Philadelphia, Pa., for plaintiff.

Curtis P. Cheyney, III, Swartz, Campbell & Detweiler, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff/insured, Nicholas A. Clemente, Esq., and his law firm, Nicholas A. Clemente, P.C., seek in this action to recover $318,909.71 pursuant to a professional liability insurance policy written by defendant/insurer, The Home Insurance Company ("the Company"). Mr. Clemente in-

curred the $318,909.71 in costs and attorneys' fees associated with the defense and settlement of an action brought against him in the State of Connecticut ("the Connecticut litigation"). Both parties have filed motions for summary judgment.

The material facts concerning which there are no genuine issues are as follows: Nicholas A. Clemente is an attorney and a member of the Pennsylvania Bar. In 1982, Mr. Clemente and his firm entered into an agreement with the United Food and Commercial Workers Union Local 919 ("the union"), located in Hartford, Connecticut, to provide prepaid legal services to union members. The agreement was renewed each year until May, 1988, when it was terminated by the union.

Mr. Clemente is not admitted to practice in the State of Connecticut. He therefore fulfilled his obligations under his contract with the union by engaging the Connecticut law firm of J. William Gagne, Jr. & Associates to provide the actual legal services to union members, under Mr. Clemente's management and supervision.

In the Spring of 1988, Mr. Clemente purchased Lawyer's Professional Liability Insurance from the defendant, The Home Insurance Company, policy no. LPL–F–201497 ("the policy"). The policy was issued to him on May 25, 1988, and was effective from April 2, 1988, through April 2, 1989. The policy was a "claims-made" policy, limited "to liability for only those claims that are first made against the Insured during the policy period." (Policy, p. 1). It obligates the Company to pay all claims in excess of the deductible that arise "by reason of any act, error or omission in professional services rendered or that should have been rendered by [Mr. Clemente] or by any person for whose acts, errors or omissions [he] is legally responsible, and arising out of the conduct of [his] profession as a lawyer...." *Id.*

On February 22, 1988, Mr. Clemente was formally notified by the union that it planned to audit him and his firm, as well as the Gagne firm, in connection with their legal services contract with the union. By letter dated May 27, 1988, counsel for the union terminated its prepaid legal services agreement with Mr. Clemente. On August 1, 1988, the union filed suit against Mr. Clemente and his firm, alleging breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), breach of contract, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, conversion, and violation of the Connecticut Unfair Trade Practices Act. On February 13, 1989, Mr. Clemente and his firm filed a third party complaint against Mr. Gagne seeking indemnity and/or contribution on all of the claims asserted by the union.

Mr. Clemente did not notify the Company upon receiving service of the complaint in the Connecticut litigation. Instead, he engaged counsel on his own. Mr. Clemente's counsel in the Connecticut litigation was not designated by the Company, nor did he obtain the Company's written consent to his choice of counsel. Mr. Clemente incurred legal fees and costs of $318,909.71. None of these costs and fees were incurred by the Company.

Mr. Clemente's chosen counsel defended the Connecticut litigation through settlement on November 26, 1990. The terms of the settlement provided that Mr. Gagne and the trustees of the union each pay Mr. Clemente $45,000.00 in settlement of his claims against them. The parties also agreed that Mr. Clemente would pay the union $90,000.00 in settlement of its claims against him. In actuality, Mr. Gagne and the trustees each paid $45,000.00 directly to the union rather than through Mr. Clemente. In connection with the settlement of the Connecticut litigation, Mr. Clemente submitted to the parties involved therein an affidavit purporting to list all of his assets, thereby confirming his "limited financial wherewithal." The affidavit did not list the insurance policy at issue in this action as one of Mr. Clemente's assets subject to that litigation.

Mr. Clemente seeks to recover his "claim expenses" incurred in connection with the defense and settlement of the Connecticut litigation. The policy defines "claim expenses" as follows:

Claims expenses, whenever used in this policy, means:

(a) fees charged by any lawyer designated by the Company;

(b) all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a claim, if incurred by the Company;

(c) fees charged by any lawyer designated by the Insured with the written consent of the Company.

(Policy, p. 6).

Mr. Clemente notified the Company of his claim on January 29, 1991, approximately two years and five months after the Complaint was served upon him in the Connecticut litigation on August 1, 1988, and approximately three months after the settlement of that litigation.

The basis for the Court's jurisdiction is diversity, pursuant to 28 U.S.C. § 1332. The parties agree that law of Pennsylvania applies.

*The Policy's Notice Provision*

█ The Company first contends that it is entitled to summary judgment on the ground that Mr. Clemente breached the notice provision of the policy and that therefore coverage is excluded. Under Pennsylvania law, in order to successfully defend a claim on the basis of an insurance policy's notice provision, the insurer bears the burden of proving "not only that the notice provision was breached, but also that it suffered prejudice as a consequence." *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977).

The policy's notice provision provides:

**I. Notice of Claims:** As a condition precedent to the right to the protection afforded by this insurance, the Insured shall, as soon as practicable, give to the Company written notice of any claim made against the Insured.

In the event suit is brought against the Insured, the Insured shall immediately forward to the Company every demand notice, summons or other process received directly or by the Insured's representatives.

(Policy, p. 7).

█ As stated, the complaint in the underlying Connecticut litigation was filed on August 1, 1988. Mr. Clemente did not notify the Company of his claim for legal expenses incurred by him in connection with his defense of the Connecticut litigation until January 29, 1992. Clearly, under the undisputed facts in this case, such notice was not timely. The first burden upon the Company, i.e., to show that the notice provision of the policy was breached, is met under the undisputed facts.[1]

In order to prevail on its motion for summary judgment, the Company must also show that it was prejudiced by the breach of the policy's notice provision. In *Brakeman*, Chief Justice Eagen explains the rationale behind the prejudice requirement:

The purpose of a policy provision requiring notice of an accident or loss to be given within a certain time is to give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis of which, it can proceed to disposition, either through settlement or defense of the claim. Such a requirement protects the insurance company from fraudulent claims, as well as invalid claims made in good faith, by allowing the insurance company to gain early control of the proceedings.

\* \* \* \* \* \*

Thus, a reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided,

1. Mr. Clemente originally claimed that the Company received actual notice of the Connecticut Litigation since another of its alleged insureds, Mr. Gagne, forwarded to it a copy of the third party complaint filed against him by Mr. Clemente on February 13, 1989. Subsequent to the filing of Mr. Clemente's motion for summary judgment, the parties entered into a stipulation that "The Home Insurance Company had no notice of the underlying Connecticut litigation by reason of Nicholas Clemente's third-party Complaint against J. William Gagne, Jr., Esquire or J. William Gagne, Jr. and Associates."

e.g., being forced to pay a claim against which it has not had an opportunity to defend effectively. In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.

*Brakeman*, 371 A.2d at 197.

In *Metal Bank of America v. Insurance Co. of North America*, 360 Pa.Super. 350, 520 A.2d 493 (1987), *allocatur denied*, 517 Pa. 607, 536 A.2d 1332 (1987), the Pennsylvania Superior Court held that, where an insured failed to notify its insurer of a claim until two years after the litigation had commenced, the insurer was prejudiced as a matter of law. 520 A.2d at 498. In *Metal Bank*, as in the instant case, the insured did not present its claim to the insurer until after the litigation that formed the basis of the claim had been settled. "The insurers did not have an opportunity to investigate the facts or participate in the defense of the action against [the insured]." *Id.* By the time the insurer received notice,

> a settlement was already a fait accompli, and the insurers, who were being called upon to provide funds for the settlement had no opportunity to control the proceedings or in any way protect themselves. As noted in *Brakeman, supra,* the reason for timely notice to the insurer is to enable it to gain early control of the proceedings and to give it an opportunity to investigate and acquire information about the case.

*Id.*

Mr. Clemente places great emphasis on the fact that he seeks in this action claim expenses as opposed to funds necessary to satisfy a settlement or a judgment. This fact does not distinguish *Metal Bank* from the instant case. The Court recognizes

that today legal fees can often be more financially burdensome than the judgments which the fees are incurred to avoid. In the Connecticut litigation, for example, Mr. Clemente's claim expenses are well over three times the entire amount of money that changed hands pursuant to the settlement of that litigation.

Furthermore, the fact that the Company was Mr. Clemente's primary rather than excess insurer, and therefore had a greater interest in controlling its insured's defense, is also a factor that supports a finding of prejudice. *See Trustees of Univ. Of Pa. v. Lexington Insurance Co.*, 815 F.2d 890, 898 (3d Cir.1987).

As a result, the Court concludes that the Company was prejudiced by Mr. Clemente's breach of the notice provision of the policy, and therefore is entitled to summary judgment on the basis of that provision.

■ Moreover, the character of the policy also supports this Court's granting the Company's Motion for Summary Judgment on the basis of the notice provision. The policy at issue is a "claims-made" policy, as opposed to an "occurrence" policy. Other district courts interpreting Pennsylvania law, one of which was affirmed by our Court of Appeals for the Third Circuit, have held that the *Brakeman* prejudice requirement is inapplicable to claims-made policies. *Employers Reinsurance Corp. v. Sarris*, 746 F.Supp. 560 (E.D.Pa.1990); *City of Harrisburg v. International Surplus Lines Insurance Co.*, 596 F.Supp. 954 (M.D.Pa.1984), *affirmed*, 770 F.2d 1067 (1985). In *Employers Reinsurance*, Judge Van Antwerpen reasoned:

> Like the insurer in the instant case, the insurer in *City of Harrisburg* was confronted with a demand for coverage for a claim known before the expiration of the policy period but not reported until after its expiration. As in the case at bar, the plaintiffs argued that the insurer had to show prejudice from the late notice before it could deny coverage. The *City of Harrisburg* court, however, noted that *Brakeman* had been decided in the context of an "occurrence" policy rather than a "claims made" policy. Of the

difference between these two types of policies, the court said:

> Both policies are intended to insure during a specific period of time against liability arising from the conduct of the insured. One type of policy, the occurrence policy, keys upon when that conduct occurs. If it occurs during the policy period, the insurer has a duty to indemnify and defend the insured regardless of when the claim against the insured is made. Conversely, the other type of policy, the claims-made policy, keys upon when the claim is asserted against the insured. If it is made against the insured during the policy period, the insurer has to perform under the contract regardless of when the conduct giving rise to the claim occurred.

The court in *City of Harrisburg* found this distinction of critical importance in deciding whether the *Brakeman* rule should be applied. It cited with approval to a Florida Supreme Court case, *Gulf Insurance Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512 (Fla.1983), which refused to compel an insurer to extend coverage to a legal malpractice claim made at the very end of the policy period but reported to the insurer a few months later. The *City of Harrisburg* court agreed with the Florida Supreme Court that such extension of coverage would rewrite the contract between the two parties and would ignore the benefits sought by each of the parties when a claims-made rather than an occurrence policy is purchased.

*Employers Reinsurance*, 746 F.Supp. at 564.

Accordingly, the Company is entitled to summary judgment on the basis of the policy's notice provision.

### The Policy's Definition of Claim Expenses

■ A second ground for granting defendant's motion for summary judgment is based upon the particular policy provision under which Mr. Clemente seeks payment, i.e., claim expenses. (Policy, p. 6, reproduced *supra.*, at p. 4). Under the policy's claim expenses coverage, the Company is obligated to provide coverage to Mr. Clemente only for (a) fees charged by any lawyer designated by the Company, (b) fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a claim, if incurred by the Company, and (c) fees charged by any lawyer designated by the Insured with the written consent of the Company. *Id.*

Mr. Clemente's counsel in the Connecticut litigation was not designated by the Company. None of the $318,909.71 in claim expenses sought by Mr. Clemente in this action were incurred by the Company. None of the $318,909.71 in claim expenses sought by Mr. Clemente in this action are fees charged by any lawyer designated by the Mr. Clemente with the written consent of the Company. These uncontested facts, when evaluated under the well-settled principles of contract interpretation in Pennsylvania, require the Court to grant the Company's motion for summary judgment.

In *Standard Venetian Blind Co. v. American Empire Ins.*, 503 Pa. 300, 469 A.2d 563 (1983), the Supreme Court of Pennsylvania explains that where "a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." (citations omitted).

The definition of claims expenses is plain and unambiguous. It provides coverage only for expenses with which the Company has been involved to some extent, either through consent or through incurring the expenses itself. Mr. Clemente has produced no affidavit, deposition, answer to interrogatory, admission, or other evidence raising a genuine issue of material fact regarding the Company's consent to or incurring of any of the expenses for which he seeks coverage.

Accordingly, for the reasons set forth above, defendant's Motion for Summary Judgment will be granted and judgment will be entered in favor of the defendant, The Home Insurance Company, and against

the plaintiffs, Nicholas A. Clemente, Esq., and Nicholas A. Clemente, P.C. Plaintiffs' Motion for Summary Judgment will be denied.