44 F.3d 1484
 TPLC, INC., a Delaware corporation,*
Plaintiff-Appellant/Cross-Appellee,
v.
UNITED NATIONAL INSURANCE COMPANY,
Defendant-Appellee/Cross-Appellant.
Nos. 92-1227, 92-1237.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 19, 1995.
 
 Peter L. Edwards (Scott C. Johnson with him, on the brief) of Rothgerber, Appel, Powers & Johnson, Denver, CO, for plaintiff-appellant/cross-appellee Telectronics, Inc.
 Leslie Block Kaye of Dill, Dill and Carr, P.C., Denver, CO, for defendant-appellee/cross-appellant United Nat. Ins. Co.
 Before McKAY, HOLLOWAY, and GARTH,** Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 These appeals arise out of Plaintiff-Appellant/Cross-Appellee Telectronics, Inc.'s (Telectronics) efforts to obtain reimbursement from its insurer, Defendant-Appellee/Cross-Appellant United National Insurance Company (United), for legal expenses incurred in defending a products liability action. Claiming that Telectronics' insurance policy was in effect for less than the total period of bodily injury alleged in the products liability action, United offered to reimburse Telectronics only for United's pro rata share of the expenses, apportioned on the ratio of the time when United's policy was in effect to the total time of exposure of the injured party to the product, and also limited to expenses incurred after the date of United's direct receipt of notification of the products liability action. Due to United's refusal to pay all of the legal expenses incurred by Telectronics in defending the underlying products liability suit, Telectronics commenced this breach of contract and bad faith breach of insurance contract action in a state court in Colorado.
 
 
 2
 After removal to the court below on diversity grounds, both parties moved for summary judgment. Concluding that Pennsylvania law governed any disputes arising under the terms of the policy, the district judge held that when the policy was in effect for less than 100% of the total period of bodily injury, Pennsylvania law required the insurer to pay only its pro rata share of the defense expenses incurred by its insured in defending the lawsuit, apportioned on the ratio of the time its coverage was in force to the total time when the injury allegedly occurred. The judge further concluded that Colorado law applied to Telectronics' bad faith claim and that Telectronics had failed to show bad faith by United under that law. The court denied a motion by United for sanctions under Fed.R.Civ.P. 11 for Telectronics' pursuit of the bad faith claim. We affirm in part, reverse in part, and remand.
 
 
 3
 * A
 
 
 4
 The facts were thoroughly stated by Judge Arraj in Telectronics, Inc. v. United Nat'l Ins. Co., 796 F.Supp. 1382 (D.Colo.1992). We therefore recite only the central facts concerning the issues before us.
 
 
 5
 From September 15, 1984, to September 15, 1985, Telectronics had general liability insurance under a policy issued by United (the policy). The policy provided liability coverage for bodily injury and property damage with a $1,000,000 limit in the aggregate and per occurrence. It also included a $10,000 deductible, which applied to both bodily injury liability and to "investigation, adjustment, and legal expenses incurred in the handling and investigation of each claim...." Aplt.App. at 180 (emphasis removed). The policy provided that United had the right and duty to defend any suit against Telectronics for damages resulting from bodily injury. Id. at 178.
 
 
 6
 For the two years following expiration of the United policy, Telectronics had purchased general liability insurance policies from Transco Syndicate # 1. Transco Policy # DOL-02181, which had a retention limit of $25,000, provided liability coverage for bodily injury and property damage with a $500,000 limit for occurrences taking place between September 15, 1985, and September 15, 1986. Transco Policy # DOL-07294, which had a retention limit of $100,000, provided liability coverage for bodily injury and property damage with a $500,000 limit for occurrences taking place between September 15, 1986, and September 15, 1987. Neither of these Transco policies, however, required Transco to reimburse Telectronics for legal expenses incurred unless the retention limits were exceeded by judgment or settlement.
 
 B
 
 7
 On May 5, 1985, a pacemaker manufactured by Telectronics was implanted in Thelma Annis of Cape Girardeau, Missouri. Ms. Annis allegedly experienced difficulties with the pacemaker, including scarring, electrical shocking, weakness, sleeplessness, heart palpitations, heart skipping, anxiety, and fainting spells. These difficulties allegedly lasted from approximately June 20, 1985, until May 14, 1987, when the pacemaker was removed and replaced.
 
 
 8
 Alleging that these problems were caused by defects in Telectronics' pacemaker, Annis and her husband commenced a products liability action against Telectronics on November 24, 1987, in the United States District Court for the Eastern District of Missouri. Shortly thereafter, Telectronics notified its insurance broker of the action. The broker forwarded a copy of the summons and complaint to claims adjusters Adjusting Services Unlimited, Inc. (ASU) on December 5, 1987. ASU was designated as the adjuster to whom various notices should be given both in the United policy and in the Transco policies. ASU, in turn, gave notice of the Annis suit to Transco but did not notify United until almost three years later.
 
 
 9
 United was not directly notified of the Annis suit until November 5, 1990, when it received a letter from ASU informing United that the pretrial statement received from the attorney representing the Annises had indicated that they were seeking to recover damages for injuries incurred during the period covered by the United policy. ASU's letter also informed United that the Annis trial was scheduled to commence on December 3, 1990. On November 29, 1990, United replied to ASU, stating in part:
 
 
 10
 First we would point out that your notice to us of this lawsuit is hardly timely and that any participation in expense sharing would be limited to those expenses incurred from the date of receipt of your tender....
 
 
 11
 From the information supplied, it would appear that the potential period of injury ran from June 20, 1985 to May 15, 1987 or a period of 23 months. Our policy period covers 3 months, June 20, to September 15, 1985. Based upon the ratio of months our share would be 13% and we repeat that this offer is limited to the expenses incurred from the date of receipt of your tender, November 5, 1990.
 
 
 12
 Id. at 225.
 
 
 13
 The Annis suit was tried before a jury in December 1990, resulting in a verdict and judgment for Telectronics. No appeal was taken. In defending itself in the Annis suit, Telectronics incurred legal expenses in the amount of $156,805.90. Due to United's refusal to pay more than a pro rata share of the defense expenses incurred after November 5, 1990, Telectronics sued United in Colorado state court for breach of contract and for bad faith breach of an insurance contract. This action was removed to the United States District Court for the District of Colorado in December 1991 on diversity grounds.
 
 
 14
 Telectronics moved for summary judgment, claiming that the language of the policy required United to reimburse it for all the legal expenses incurred in defending the Annis suit, not just a pro rata share.[1] United filed a cross-motion for summary judgment, arguing that Telectronics' failure to provide it direct notice of the Annis suit until November 5, 1990, some three years after the suit was filed, amounted to a failure to satisfy the policy's notice requirements, thus voiding coverage.[2] United therefore claimed that it was relieved of its duty to defend Telectronics in the Annis suit and was not required to reimburse Telectronics for any legal expenses incurred in defending the action. Alternatively, United argued that even if it were found that it had a duty to defend under the policy, it would only be liable for its pro rata share of Telectronics' legal expenses apportioned on the time United's policy was in effect during the period of injury and limited to expenses incurred after notice of suit on November 5, 1990.
 
 
 15
 Telectronics, citing Endorsement 5 of the policy,[3] argued that the policy only requires that notice be given to ASU, i.e. it does not further require that additional notice be provided directly to United. Moreover, Telectronics pointed out that neither an address nor a telephone number for United appears anywhere in the policy. Thus, Telectronics argued that the policy's notice of suit requirement was fully satisfied on December 5, 1987, the date on which Telectronics' insurance broker notified ASU of the Annis suit. Similarly, Telectronics argued that ASU was United's agent, and as such, notice to ASU was by operation of law notice to United.
 
 C
 
 16
 The district judge concluded that in light of his ruling, explained below, that United showed no prejudice from lack of notice, it was not necessary to determine either whether United had received timely notice under the policy or whether ASU was the agent of United. 796 F.Supp. at 1387. Finding that the policy did not indicate which state's law would govern disputes arising under its terms, the judge engaged in a choice of law analysis. He concluded that the policy should be construed under Pennsylvania law, as argued by Telectronics, rather than Colorado law, as contended by United. Citing Brakeman v. Potomac Ins. Co., 472 Pa. 66, 371 A.2d 193 (1977), the judge held that under Pennsylvania law an insurer seeking to avoid coverage for lack of timely notice must also prove " 'that it suffered prejudice as a consequence.' " 796 F.Supp. at 1388 (quoting Brakeman, 371 A.2d at 196).[4] The judge held that United had not satisfied its burden of proving prejudice. Consequently, United would be required to reimburse Telectronics for its defense of the Annis suit, regardless of whether Telectronics had given timely notice.
 
 
 17
 The judge then determined the extent of United's liability for the costs of defense. Citing J.H. France Refractories Co. v. Allstate Ins. Co., 396 Pa.Super. 185, 578 A.2d 468, 477 (1990) (France I ), rev'd in part, aff'd in part, 534 Pa. 29, 626 A.2d 502 (1993) (France II ), he concluded that under Pennsylvania law, United was only required to pay its pro rata share of all of Telectronics' defense costs, not limited however to those expenses incurred after November 5, 1990 (the date of United's direct notice of the Annis suit), as argued by United. Following France I and Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212 (6th Cir.1980), reh'g granted, clarified, 657 F.2d 814 (6th Cir.1981), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), which France I had cited with approval, the district judge held that Telectronics should bear a portion of the cost of defense for the time during which the Transco policies, which provided no coverage under the circumstances, had been in effect.
 
 
 18
 Since United's policy was in effect for only three months, or 13% of the total period of Annis' alleged injury (June 20, 1985, to May 14, 1987, a 23-month period), the judge concluded that United was only required to reimburse Telectronics for 13% of its total legal expenses, minus 13% of the $10,000 deductible. Therefore, United was only required to reimburse Telectronics $19,084.77 (i.e., $156,805.90 multiplied by 13%, minus 13% of the $10,000 deductible). The court also awarded Telectronics prejudgment interest at the Pennsylvania statutory rate of 6%.
 
 
 19
 In its motion for summary judgment Telectronics also claimed that it was entitled to punitive damages due to United's bad faith refusal to reimburse it for all the legal expenses Telectronics had incurred in defending the Annis suit and sought recovery of attorneys' fees incurred in bringing this action. Conversely United, claiming that Telectronics' bad faith breach of contract claim was frivolous, sought summary judgment on that claim and sanctions pursuant to Fed.R.Civ.P. 11.
 
 
 20
 Holding that there was nothing to suggest that United had acted in bad faith in its dealings with Telectronics, the district judge granted summary judgment in favor of United on Telectronics' bad faith breach of contract claim. However, the judge denied United's motion for sanctions. He also denied Telectronics' request for attorneys' fees.
 
 
 21
 Telectronics and United raise several issues by the appeal and cross-appeal, to which we now turn.
 
 II
 
 22
 * We review summary judgments de novo, applying the same standards as those employed by the district court under Fed.R.Civ.P. 56(c). Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Id.; Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth but to decide whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52, 106 S.Ct. at 2512.
 
 B
 
 23
 It is undisputed that Annis alleged a "bodily injury" arising from a "product hazard," constituting an "occurrence" during the policy period as defined by the policy. Therefore unless, as United argues, there was a breach of the notice requirements of the policy such as to excuse United from the duty of defense, United was obligated to provide Telectronics with a defense in the Annis suit. As noted, Telectronics contends that it satisfied the notice of suit requirement by giving notice to ASU, while United contends that direct notice to it was required.
 
 
 24
 The district court concluded that Endorsement 5 required Telectronics to give notice to ASU in the event of an occurrence, and that the policy also required Telectronics to satisfy the other notice provisions of the policy (apparently Condition 4) for United to bear any liability. 796 F.Supp. at 1387. In so ruling, the court found that the two notice provisions, quoted supra in notes 2 and 3, were not mutually repugnant. Thus, the court reasoned, Telectronics' argument that the typewritten provisions of Endorsement 5 should control over the printed provisions of Condition 4 was not well taken. The court did not discuss Telectronics' further argument that the two provisions created an ambiguity which, according to Pennsylvania law, should have been construed against the insurer. Appellant's Opening Brief at 40. This was because it was not necessary in view of the judge's finding of no prejudice from the allegedly untimely notice to United. We have considered the argument of ambiguity and find it persuasive.[5]
 
 
 25
 Specifically, we find ambiguity arising from the provisions in Condition 4(a), see note 2 supra, that notice of an occurrence must be given to the company "or any of its authorized agents," when read in conjunction with Endorsement 5, see note 3 supra, specifically designating ASU as the party to be notified in the event of "ANY OCCURRENCE WHICH MAY RESULT IN A CLAIM." We note that Condition 4 does not contain a designation of ASU within its notice provision. However, we do not read this as removing the ambiguity about ASU's status. We note that Endorsement 5 is captioned "CLAIMS REPORTING" in all capital lettering, thus at least suggesting that it applies to claims as well as mere "occurrences." Especially in light of the fact that only the address and telephone number of ASU are given in the policy or endorsement, and none was given for United, we conclude that construed as a whole the policy is ambiguous regarding whether direct notice of suit to United was also required or whether such notice to ASU was sufficient. The ambiguity must, of course, be construed against United and in favor of Telectronics. Bateman v. Motorists Mutual Ins. Co., 527 Pa. 241, 590 A.2d 281, 283 (1991). Therefore, we hold that the notice of suit requirement was satisfied when such notice was given to ASU.
 
 
 26
 However, even if we were to conclude, as the district court did, that the notice given to ASU was not sufficient to satisfy Telectronics' duty to give notice of suit, we still would find United obligated to Telectronics for reimbursement of the costs of defending the Annis action because we agree with the district judge's views, 796 F.Supp. at 1388-90, that Pennsylvania law must govern the parties' rights and duties under the policy; that under that state's law, United is not relieved of its duties unless it carries the burden of showing that it suffered prejudice from the belated notice; and that United failed to carry this burden of proof.
 
 
 27
 The policy does not indicate which state's law governs disputes arising under it. In diversity actions the federal courts are obliged to apply the conflict of laws rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). We must therefore apply the conflict of laws rules of Colorado, as the district court correctly did. Colorado has adopted "the 'most significant relationship' approach of Restatement (Second) of Conflict of Laws for resolving conflict of laws questions in contract cases." Webb v. Dessert Seed Co., Inc., 718 P.2d 1057, 1066 (Colo.1986) (en banc) (citing Wood Brothers Homes, Inc. v. Walker Adjustment Bureau, 198 Colo. 444, 601 P.2d 1369, 1372 (1979) (en banc)). In Wood Brothers, the Supreme Court of Colorado stated:
 
 
 28
 Where a conflict of laws question is raised, the objective of the Restatement (Second ) is to locate the state having the "most significant relationship" to the particular issue. In analyzing which state has the most significant relationship, the principles set forth in Restatement (Second ) sections 6[6] and 188[7] are to be taken into account. Once the state having the most significant relationship is identified, the law of that state is then applied to resolve the particular issue.
 
 
 29
 601 P.2d at 1372 (footnotes omitted). We have considered the factors listed in sections 6 and 188 and agree with Judge Arraj that Pennsylvania, United's state of incorporation and principal place of business, has the most significant relationship to the policy at issue:
 
 
 30
 Pennsylvania has the most significant relationship to the contract and the greatest interest in seeing that its laws apply when interpreting the notice provisions of insurance contracts written and issued by Pennsylvania insurers. It simply would not make sense to have United's insurance contract notice provisions interpreted in fifty different ways every time a dispute arose between United and one of its insureds. Since the subject matter of the Policy (the heart pacemakers) has no particular locus, there is no compelling reason to apply the law of the state in which the insured has its principal place of business. The worthy goals stated in Restatement Sec. 6 of uniformity, predictability and ease of applicability are best served by applying Pennsylvania law to this dispute.
 
 Telectronics, 796 F.Supp. at 1390.[8]
 C
 
 31
 The district court also correctly determined that under Pennsylvania law as pronounced in 1977, an insurer that seeks to avoid providing coverage to an insured because of lack of timely notice must also show that it was prejudiced by this default.[9] Brakeman, 371 A.2d at 196. "[A] reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided, e.g., being forced to pay a claim against which it has not had an opportunity to defend effectively." Id. at 197 (emphasis added). The burden of showing prejudice is on the insurance company. Id. at 198.[10]
 
 
 32
 United asserts that it was prejudiced by not having received direct notice of the Annis suit until November 5, 1990, arguing that: (1) it lost the opportunity to settle the Annis suit for an amount less than the defense expenses incurred by Telectronics in defending the suit;[11] (2) it has no basis for determining the reasonableness of the defense expenses incurred by Telectronics in defending the Annis suit because it did not receive any bills in connection with the defense of the Annis suit until nearly five years after the Annis claim was made, and the bills are cryptic; (3) it lost the opportunity to avoid unnecessary litigation expenses and to control the risk of the litigation; (4) it was exposed to risk of indemnification; (5) it lost the opportunity to bring a declaratory judgment action at the time the Annis suit was commenced, permitting an earlier and less expensive resolution of the issues; (6) it has incurred substantial expenses; (7) it has been slandered by Telectronics' accusation of bad faith; (8) it risks exposure to loss; (9) its relationships in the insurance industry have suffered; and (10) it has been annoyed, harassed, and burdened by the extra work occasioned by this suit.
 
 
 33
 These generalized claims do not suffice to satisfy United's burden of proving prejudice under Pennsylvania law. There is nothing in the record to suggest that United was directly prejudiced by Telectronics' allegedly untimely notice of suit. The conclusion that United had not shown prejudice is bolstered by the facts that Telectronics was victorious in the Annis suit (i.e., it was not necessary for United to indemnify Telectronics), and Telectronics was represented in the Annis suit by counsel who were on United's list of approved counsel. Aplt.App. at 214. Further, United made no effort to develop evidence to support its allegation that the legal fees were excessive, nor did it attempt to support its suggestion that somehow this dispute between it and its insured could have been resolved less expensively had the dispute arisen promptly after the Annises made their claim. Other contentions do not relate at all to United's position with respect to the Annis claim, which is the focus of the holding of Brakeman.
 
 
 34
 Having failed to satisfy its burden of proving prejudice, United had a duty to defend Telectronics in the Annis suit and to reimburse Telectronics for expenses incurred in that defense. See Imperial Cas. & Indem. Co. v. High Concrete Structures, 858 F.2d 128, 131 n. 2 (3d Cir.1988) ("If an insurer has a duty to defend a suit and is requested to provide a defense, then that insurer is clearly obligated to pay fees and costs incurred by the insured in defending the suit.") (citations omitted) (applying Pennsylvania law).
 
 
 35
 Citing Safeguard Scientifics, Inc. v. Liberty Mutual Ins. Co., 766 F.Supp. 324 (E.D.Pa.1991), rev'd in material part, 961 F.2d 209 (3d Cir.1992) (table)[12]; and Clemente v. Home Insurance Co., 791 F.Supp. 118 (E.D.Pa.), aff'd without opinion, 981 F.2d 1246 (3d Cir.1992), United makes a further argument that the duty to defend in any event does not arise until the insurer is given notice of the underlying suit and that, accordingly, it can only be liable for defense costs incurred after its receipt of notice. In Safeguard Scientifics, the federal district court found no prejudice was shown by the insurer resulting from the belated notice, as is also found in the instant case. The court then considered the insurer's contention that its liability for defense costs should be limited to those costs incurred after notice, the same contention made by United. The court noted that no Pennsylvania case law was cited by the parties on the issue and ruled in favor of the insurer. 766 F.Supp. at 333. Similarly, we find no direct holding of the Pennsylvania Supreme Court dealing with this theory for rejecting pre-notice defense expenses.
 
 
 36
 However, we are not persuaded by the Safeguard Scientifics opinion that the insurer can avoid the obligation to reimburse the insured for defense costs incurred prior to receipt of notice in the absence of prejudice to the insurer's interests. The opinion says there was no breach of the duty to defend until notice was given, and therefore it denied pre-notice defense expenses. Id. at 333. However, Safeguard Scientifics makes no persuasive analysis or distinction of the Pennsylvania Supreme Court's Brakeman holding and rationale as applied to the recoverability of pre-notice defense expenses.
 
 
 37
 Moreover, United's reliance on Clemente is misplaced. In that case, the insured's sole claim was for reimbursement of the costs of defense incurred prior to giving notice to the insurer. As one ground for granting summary judgment in favor of the insurer, the Clemente court specifically stated that the insurer was required to show prejudice from the late notice, quoting reasoning from Brakeman, and found that there the insurer had carried this burden.[13] 796 F.Supp. at 120-21. In accord with that Clemente reasoning and Judge Arraj here, we conclude that United's contention is inconsistent with the reasoning of Brakeman.[14]
 
 
 38
 We therefore hold that in the absence of a showing of prejudice, the insurer's duty to defend includes the duty to reimburse for reasonable costs of defense incurred prior to notice, as well as for subsequent defense costs. United having failed to produce any evidence that the costs incurred by Telectronics were not reasonable, we reject United's contention.
 
 D
 
 39
 United also argues that its liability for the costs of defense should be reduced by allocating a portion of the costs to Telectronics as a self-insurer for the time period from the expiration of the United policy (September 15, 1985) until the Telectronics pacemaker was removed from Mrs. Annis (May 14, 1987). As noted, here the district court followed France I and allocated 87% of the costs of defense to Telectronics.
 
 
 40
 While this appeal was pending, the Supreme Court of Pennsylvania issued its opinion in France II, reversing in material part the Superior Court's decision in France I, on which the district judge had properly relied in determining the extent of United's liability for Telectronics' costs of defense. In light of Huddleston v. Dwyer, 322 U.S. 232, 236, 64 S.Ct. 1015, 1017-18, 88 L.Ed. 1246 (1944), we must apply France II as the controlling Pennsylvania rule at the time of our decision.
 
 
 41
 In France II, which involved coverage for products containing asbestos, the Pennsylvania Supreme Court rejected the approach of the lower Pennsylvania court, which had prorated the indemnity obligations of all the insurers whose policies were in effect during the period of bodily injury, including the insured as a self-insurer during periods when it did not purchase liability insurance. Instead, France II held that "once the liability of a given insurer is triggered, it is irrelevant that additional exposure or injury occurred at times other than when the insurer was on the risk. The insurer in question must bear potential liability for the entire claim." 626 A.2d at 508.
 
 
 42
 The Pennsylvania Supreme Court said that the "most compelling" reason for holding the insurers jointly and severally liable for indemnity, rather than allocating liability among the insurers, "is the language of the policies themselves." Id. at 507. Each policy obligated each insurer to " 'pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury to which the insurance applies....' " Id. at 507 (emphasis in original). In France II, the court held that "under any given policy, the insurer contracted to pay all sums which the insured becomes legally obligated to pay, not merely some pro rata portion thereof." Id. (emphasis in original). This "all sums" terminology is similar to that in the United policy at issue. As noted, the United policy provides that United "shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage...." Aplt.App. at 178 (emphasis added).
 
 
 43
 The court in France II did discuss the insurer's liability for costs of defense. 626 A.2d at 505-06, 509-10. Although this issue had not been explicitly addressed in France I, the court noted that it was "implicit" that the lower court had intended to prorate the costs of defense in the same way as the obligation to indemnify. 626 A.2d at 506. As we understand it, France II held that the duty to defend, like the duty to indemnify, could not be prorated among the various insurers; to view its ruling otherwise would make the insurer's duty to defend narrower than its duty to indemnify, which would run counter to France II 's reasoning. "It is well established that the duty to defend and to pay the costs of defense is broader than the duty to indemnify." Id. 626 A.2d at 510. We think that it is implicit in France II that the language of the policies was the most compelling reason for rejecting the argument for proration of defense costs, as it was for declining to prorate the indemnity obligations. The insurers there, and United in this case, promised to defend all claims, not some pro rata portion thereof.
 
 
 44
 And importantly, France II declined to impose an obligation on the insured as a self-insurer during periods when it was uninsured, as the Pennsylvania Superior Court had done. According to the Pennsylvania Supreme Court:
 
 
 45
 [A]lthough it is superficially attractive to include [the insured] in the pro rata apportionment of liability for periods during which it was uninsured, to do so is to create a judicial fiction which cannot be supported, viz., that [the insured] was self insured under a policy the terms of which are ascertainable so that [the insured] may be included among the insurers in apportionment of liability. Faced with the same argument, the United States Court of Appeals for the District of Columbia Circuit stated:
 
 
 46
 We have no authority upon which to pretend that [the manufacturer] also has a 'self-insurance' policy that is triggered for periods in which no other policy was purchased. Even if we had the authority, what would we pretend that the policy provides? What would its limits be? There are no self-insurance policies, and we respectfully submit that the contracts before us do not support judicial creation of such additional insurance polices.
 
 
 47
 Id. 626 A.2d at 508 (quoting Keene Corp. v. Insurance Co. of North America, 667 F.2d 1034, 1048-49 (D.C.Cir.1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982)). Again, we understand the France II opinion to apply this reasoning to both the indemnity obligation and the duty to defend.
 
 
 48
 United, however, argues that Telectronics was self-insured, not uninsured, and so should be required to share in the cost of defending the Annis suit notwithstanding the holding in France II. This argument is based on the fact that under the subsequent Transco policies, Telectronics bore significantly greater liability for the costs of defense than under the United policy. Indeed, it is clear that under the circumstances of the Annis suit, Transco had no liability at all for the costs of defense. Thus, had the pacemaker been implanted after expiration of the United policy, Telectronics would have had to bear the entire cost of defense. We are not persuaded that these facts support relieving United of any portion of the cost of defense, however.
 
 
 49
 First, we think it is beyond peradventure that France II precludes United from compelling Telectronics to bear any portion of the defense cost on any theory other than the self-insurance theory. Thus, most of the cases cited by United in its briefs filed before promulgation of the France II opinion are simply inapposite because they are in conflict with this most recent, authoritative pronouncement of Pennsylvania law.
 
 
 50
 As we view it, then, the sole remaining issue is raised by United's reliance (in its supplementary brief filed after the France II opinion was issued) on a single statement in France II that "[t]here is no bar against an insurer obtaining a share of indemnification of defense costs from other insurers under 'other insurance' clauses or under the equitable doctrine of contribution." 626 A.2d at 509. Obviously, this comment cannot aid United unless we conclude that Telectronics was an insurer, because of the retention provision and Transco's limited reimbursement obligation on defense costs, during the period when coverage was provided by Transco. We find nothing in the France II opinion's discussion of the effect of periods of no insurance that would support such a conclusion. Clearly, if Telectronics had no insurance after expiration of the United policy, France II would preclude holding Telectronics liable for any portion of the defense costs at issue. We think it incongruous to suggest that Telectronics should be in a less advantageous position because it continued to purchase liability insurance, which is the result for which United argues, than it would have been had it declined to do so.
 
 
 51
 In Cooper Laboratories, Inc. v. Internat'l Surplus Lines Ins. Co., 802 F.2d 667 (3d Cir.1986), the court considered and rejected a similar argument. In that case, the insurer provided products liability coverage in excess of one million dollars retention to the insured pharmaceuticals manufacturer. The policy also obligated the insurer to defend any suit against the insured alleging bodily injury within the policy period. The insured settled a personal injury suit and demanded reimbursement, including the cost of defense, from the insurer. Upon the insurer's refusal to reimburse, the insured brought suit under the policy. The insurer contended that the manufacturer was self-insured up to one million dollars and so had a duty to defend "as do primary insurers as a matter of insurance industry custom." Id. at 675. The Third Circuit disagreed, saying:
 
 
 52
 This contention may be dismissed rather quickly. Cooper is neither a primary insurer nor an insurer at all. A duty to defend is a matter of contract, and the reason why primary insurers provide a defense is that their policies require that they do so. An industry custom allocating responsibility when two carriers both may have a contractual duty is not applicable when one of the parties bears no obligation.
 
 
 53
 802 F.2d at 675. See also Keene, supra; Lac d'Amiante du Quebec, Ltee. v. American Home Assur. Co., 613 F.Supp. 1549, 1562-63 (D.N.J.1985). We agree with this reasoning and hold that Telectronics has no liability for contribution because it is not an insurer with a contractual duty to defend.
 
 
 54
 United's alternative argument in response to the France II decision is unpersuasive. It says that France II dealt with the duty to indemnify, which is not our issue, and that France II "does not alter Federal case law or the stream and weight of authority" favoring the France I method of apportionment of legal expenses in a case like this. Supp.Brief of Aple. at 2. The effort to distinguish France II as dealing with indemnity and not defense costs fails to convince us because the underlying issue as to both contractual duties is the same, and France II, in our view, so holds. The suggestion that we follow "Federal case law" or other state decisions and not the controlling Pennsylvania law of France II simply ignores Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 55
 We hold that United owes Telectronics reimbursement of $156,805.90, the sum total of all the expenses incurred by Telectronics in defending the Annis suit, less the $10,000 deductible, for which judgment should be entered by the district court.
 
 III
 
 56
 Telectronics also appeals the district court's summary judgment rejecting its bad faith breach of insurance contract claim. The parties agree that Colorado law should be applied in resolving this claim. See First Nat'l Bank v. Rostek, 182 Colo. 437, 514 P.2d 314, 320 (1973) (adopting the most significant relationship test of section 145 of the Restatement (Second) of Conflict of Laws (1969)). We agree with the district court that Colorado has the most significant relationship to the bad faith dispute.
 
 
 57
 * In Farmers Group, Inc. v. Williams, 805 P.2d 419 (Colo.1991) (en banc), the Colorado Supreme Court discussed the tort of bad faith breach of an insurance contract:
 
 
 58
 In the context of insurance contracts, courts have established two standards of conduct by the insurer, depending on the type of benefit the insured is seeking to enforce. When the benefit derives from the insurer's duty to defend the insured against third-party actions, that relationship is characterized as a 'third-party claim.' A 'first-party claim,' on the other hand, results when the insured makes a claim against his insurer for benefits accruing directly from the insurance contract.
 
 
 59
 Id. at 421 (citation omitted).
 
 
 60
 Under Colorado law, third-party claims are governed by a reasonableness standard, "i.e. would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1274 (Colo.1985) (en banc) (citations and internal quotations omitted). In contrast, to prevail in a first-party claim, the insured must establish that the insurer both acted unreasonably and "with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." Id.
 
 
 61
 We think it clear that a third-party claim was involved here. Hence, under Colorado law regarding third-party insurance, "[t]he question of whether an insurer has breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances. The relevant inquiry is whether the facts ... show the absence of any reasonable basis for denying the claim." Farmers Group, Inc. v. Trimble, 691 P.2d 1138, 1142 (Colo.1984). The standard is thus "akin to that of negligence...." Id.
 
 
 62
 We agree with the district court that even under this more stringent standard for assessing an insurer's conduct, United did not act in bad faith in arguing for proration of the costs of defending the Annis suit. At the time that United took this position, the law governing the extent of an insurer's duty to defend in these circumstances was not well settled, as the Pennsylvania Supreme Court recognized in France II:
 
 
 63
 We do not read the issues presented in this case as simple ones, nor are the principles underlying our decision obvious. It would be harsh indeed to attribute bad faith to parties which relied on the reasoning and approaches that other courts have found convincing, when there had been no definitive precedent in this jurisdiction.
 
 
 64
 France II, 626 A.2d at 510. We agree with this assessment. Thus, the summary judgment against Telectronics on this portion of its bad faith claim was correct.
 
 B
 
 65
 There remains the portion of the summary judgment for United on the bad faith claim dealing with United's position denying that ASU was its agent for receipt of notice of the Annis suit. Relying on this position, United denied responsibility for any part of the costs of defense incurred before United's direct receipt of notice of the Annis suit on November 5, 1990. United took this position about the temporal limitation on its liability for defense costs in its initial response to the November 5, 1990, notice of the suit and continues to argue this position on appeal. United thus continues to eschew any effectiveness of the notice of the suit to ASU on December 5, 1987, when Telectronics' insurance broker forwarded a copy of the Annis summons and complaint to ASU.
 
 
 66
 The district judge held that although he had not "ruled on the effectiveness of the notice to ASU, clearly [United's denial of effectiveness of earlier notice to ASU] is a position upon which reasonable minds could differ." 796 F.Supp. at 1393. We agree. We feel this is a third-party claim under Colorado law and therefore the test for Telectronics' bad faith claim is "whether the facts ... show the absence of any reasonable basis for denying the claim." Farmers Group v. Trimble, 691 P.2d at 1142. Reasonable minds could differ as to the effectiveness vis-a-vis United of the transmittal to ASU of the summons and complaint on December 5, 1987. We feel it was reasonably arguable that Endorsement 5 required Telectronics to provide notice to ASU of an occurrence, but that Condition 4(b) required the insured to immediately forward "to the company" every demand, notice, summons or other process. While we have earlier held the policy and endorsement ambiguous so that this Condition 4(b) notice of suit requirement was satisfied when such notice was given to ASU, see Part II-B supra, we are persuaded that the contrary interpretation that notice of suit was required to be given directly to United is not unreasonable. Therefore the circumstances do not support a bad faith claim on this portion of the controversy and we will affirm fully the grant of summary judgment for United on the bad faith claim.[15]
 
 IV
 
 67
 In its cross-appeal, United asks for sanctions pursuant to Fed.R.App.P. 38 for Telectronics' continued prosecution of its bad faith breach of insurance contract claim. We do not view Telectronics' arguments on the bad faith issues to be so clearly without merit as to call for sanctions.
 
 
 68
 AFFIRMED in part, REVERSED in part, and REMANDED for entry of judgment in accord with this opinion.
 
 
 
 *
 Formerly known as Telectronics, Inc.; TPLC, Inc., was substituted as a successor to Telectronics, Inc., whose name is used throughout this opinion
 
 
 **
 The Honorable Leonard I. Garth, Senior Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 United's policy provides:
 I. COVERAGE A--BODILY INJURY LIABILITY
 COVERAGE B--PROPERTY DAMAGE LIABILITY
 The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 A. bodily injury or
 B. property damage
 to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations hazard or the products hazard, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
 Aplt.App. at 178 (latter emphasis added).
 
 
 [2]
 United relied on Condition 4 of the policy. Condition 4 states in part:
 Insured's Duties in the Event of Occurrence, Claim or Suit:
 (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
 (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
 (c) ... The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.
 Aplt.App. at 174 (latter emphasis added).
 
 
 [3]
 Endorsement 5 provides:
 CLAIMS REPORTING
 IN THE EVENT OF ANY OCCURRENCE WHICH MAY RESULT IN A CLAIM AGAINST THIS POLICY, THE INSURED SHOULD IMMEDIATELY REPORT SUCH OCCURRENCE TO:
 ADJUSTING SERVICES UNLIMITED, INC.
 P.O. BOX 19069
 LANSING, MICHIGAN 48901
 TELEPHONE NUMBER--(517) 321-5565
 ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.
 Aplt.App. at 185 (bold face emphasis in original).
 
 
 [4]
 Under Colorado law a showing of prejudice is not required for an insurer to avoid coverage. Marez v. Dairyland Ins. Co., 638 P.2d 286, 290-91 (Colo.1981)
 
 
 [5]
 As discussed infra, we agree with the district court's conclusion that Pennsylvania law must govern all contractual issues in this case
 
 
 [6]
 Section 6 states:
 Choice-of-Law Principles
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.
 
 
 [7]
 Section 188 states:
 Law Governing in Absence of Effective Choice by the Parties
 (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Sec. 6.
 (2) In the absence of an effective choice of law by the parties...., the contacts to be taken into account in applying the principles of Sec. 6 to determine the law applicable to an issue include:
 (a) the place of contracting,
 (b) the place of negotiation of the contract,
 (c) the place of performance,
 (d) the location of the subject matter of the contract, and
 (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
 These contacts are to be evaluated according to their relative importance with respect to the particular issue.
 (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in Secs. 189-199 and 203.
 
 
 [8]
 Our conclusion that we are required to apply Pennsylvania law in this case is consistent with our previous statement that "[i]nsurance policies generally are interpreted under the law of the state where the policy was issued." Budd v. American Excess Ins. Co., 928 F.2d 344, 347 (10th Cir.1991) (also applying Colorado law) (citing Blue Cross of W. N.Y. v. Bukulmez, 736 P.2d 834, 841 (Colo.1987))
 
 
 [9]
 According to the Supreme Court of Pennsylvania:
 [T]he function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.
 Brakeman, 371 A.2d at 197.
 
 
 [10]
 In this regard, the Supreme Court of Pennsylvania has recognized that "prejudice is a difficult matter to prove affirmatively, but although it may be difficult for the insurance company to prove it suffered prejudice as a consequence of an untimely notice, it appears to us that it would be at least as difficult for the claimant to prove a lack of prejudice." Brakeman, 371 A.2d at 198 (footnote with citations omitted)
 
 
 [11]
 United States that the Annises offered to settle their claims for $150,000, and that the legal expenses incurred in defending the Annis suit were in excess of $156,000. The original demand by the Annises, however, was $500,000, and the $150,000 offer was not made until shortly before the Annis trial, when the record shows that substantial legal fees had already been incurred
 
 
 [12]
 We recognize that the Third Circuit by its internal operating procedures does not treat unpublished opinions as binding precedents. Internal Operating Procedures 5.8 of the Third Circuit provides:
 Because the court historically has not regarded unpublished opinions as precedents that bind the court, the court by tradition does not cite to its unpublished opinions as authority.
 We, nevertheless, cite the unpublished reversal, which is reported in the table of Third Circuit rulings cited above, to advise the readers of the true status of the Safeguard Scientifics opinion.
 
 
 [13]
 As grounds for its finding of prejudice, the Clemente opinion stated, inter alia, that a settlement had been made before notice of suit was given and counsel not approved by the insurer was used by Clemente
 
 
 [14]
 The judge in Clemente recognized that the Brakeman prejudice requirement applies in cases involving occurrence policies as does the instant case. As an alternative ground for his ruling for the insurer, the judge in Clemente said that his ruling was supported by the character of the policy, there a "claims-made" policy; the judge noted that some courts have held that the Brakeman prejudice requirement is inapplicable to claims-made policies, and he applied that view as an alternative basis for his ruling. 791 F.Supp. at 121-22
 
 
 [15]
 One further point is briefly argued by Telectronics. It says that United's agent, ASU, was negligent in failing to notify United promptly of the Annis suit in 1987; ASU's negligence should be imputed to United as a matter of law; there is an obvious question of fact as to ASU's negligence; and if ASU is found to be United's agent, whose negligence would be imputed to United, United should be found to have acted in bad faith because of ASU's negligent handling of the Annis claim. Appellant's Opening Brief at 44; Reply Brief of Appellant at 27
 We find no mention of this argument in Telectronics' summary judgment briefs below. In any event, we are not persuaded by this contention. Imputing negligence or knowledge of ASU as an agent to United does not equate to direct forwarding to the insurer of the Annis summons and suit papers in compliance with a literal interpretation of Condition 4 which, as we have noted, is not unreasonable. The argument thus does not save Telectronics' bad faith claim.